## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. CHRISTOPHER NIEBAUER, | CIVIL ACTION No. _____ |
| Plaintiff, | |
| v. | **ELECTRONICALLY FILED** |
| SLIPPERY ROCK UNIVERSITY, | |
| Defendant. | **COMPLAINT IN CIVIL ACTION** |
| | Filed on behalf of Plaintiff: |
| | DR. CHRISTOPHER NIEBAUER |
| | Counsel of record for this party: |
| | Marcus B. Schneider, Esquire |
| | PA I.D. No. 208421 |
| | Alex J. Barker, Esquire |
| | PA I.D. No. 316871 |
| | STEELE SCHNEIDER |
| | 428 Forbes Avenue, Suite 700 |
| | Pittsburgh, PA 15219 |
| | (412) 235-7682 |
| | (412) 235-7693/facsimile |
| | marcschneider@steeleschneider.com |
| | alexbarker@steeleschneider.com |
| | **JURY TRIAL DEMANDED** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. CHRISTOPHER NIEBAUER, | : | CIVIL ACTION No. _____ |
| Plaintiff, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| SLIPPERY ROCK UNIVERSITY, | : | |
| Defendant. | : | **COMPLAINT IN CIVIL ACTION** |

### COMPLAINT

Plaintiff Dr. Christopher Niebauer, by his undersigned counsel, files this Complaint against Defendant Slippery Rock University and states the following:

### Jurisdiction and Venue

1. This action arises in part under 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a.

2. Jurisdiction over Plaintiff's claims is conferred on the Court by 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue in this District is proper under 28 U.S.C. § 1391(b).

### Parties

4. Plaintiff Dr. Christopher Niebauer is a Pennsylvania resident residing at 127 Jenny Dr., Butler, PA 16001.

5. Defendant Slippery Rock University (SRU) is a public university within the Pennsylvania State System of Higher Education. SRU has a primary address for the purposes of service at 1 Morrow Way, Slippery Rock, PA 16057.

## Exhaustion of Remedies

6. Plaintiff timely filed charges of sex discrimination and retaliation with the Equal Employment Opportunity Commission, located in Pittsburgh, Pennsylvania, alleging discrimination and retaliation by Defendant under Title VII, as amended.

7. Plaintiff has fulfilled all conditions precedent to the filing of this action, which is timely filed.

## Factual Background

8. As background for this matter, SRU hired Dr. Niebauer as an assistant professor in its Psychology Department in August of 2000.

9. Dr. Niebauer has experienced ongoing gender-based discrimination and harassment at SRU since 2005.

10. SRU's Psychology Department currently consists of eight professors, all of whom are female except for Dr. Niebauer.

11. The majority of SRU personnel who supervise the Psychology Department are female as well.

12. Dr. Susan E. Hannam is the Dean of the College of Health, Environment, and Science at SRU. In this role, Dean Hannam oversees the Psychology Department.

13. Dr. Jennifer Sanftner is the Chair of the Psychology Department at SRU and Dr. Niebauer's immediate supervisor.

14. Holly McCoy is the Assistant Vice President of Diversity and Equal Opportunity at SRU.

15. Continuously and for several years, certain professors in the Psychology Department and supervisory personnel have overtly favored women over men.

16. Since 2005, Dr. Niebauer has spoken out about various issues in the Psychology Department.

17. In the summer of 2005, Dr. Niebauer protested the Department's refusal to hire a woman because she was pregnant.

18. Specifically, the search committee of which Dr. Niebauer was a part turned down an applicant because she was pregnant.

19. Dr. Niebauer told the Department that it was illegal to consider a female's pregnancy status. Dr. Niebauer also voiced these concerns to Dean Hannam and Bill Williams, who at that time was SRU's Provost and Vice President of Academic Affairs.

20. Later that year, after having voiced these complaints concerning the hiring process, Dr. Niebauer applied for promotion to Associate Professor.

21. On January 31, 2006, Dean Hannam made a recommendation to SRU that Dr. Niebauer should not be promoted.

22. In spite of Dean Hannam's recommendation, Dr. Niebauer was promoted to Associate Professor.

23. On several occasions, Dr. Niebauer has protested the Department's repeated hiring of a particular female applicant for short-term positions over more qualified male applicants.

24. In May 2010, in support of her application, the female showed during her interview a racist video that both included offensive, racially-biased comedic content not appropriate in an academic setting and demonstrated technically unsound testing procedures.

25. The female candidate was nevertheless hired for the position over more a qualified male candidate.

26. The same female candidate subsequently was hired by the Department over more qualified male applicants on two additional occasions.

27. For the 2011-2012 academic year, the Department hired the female applicant over a more

qualified male applicant with superior teaching experience.

28. In order to repeatedly hire this female candidate, the Department created heavily biased applicant search terms, which catered to this candidate's experience.

29. The intended effect of these search terms was to severely limit the number of appropriate applicants, thus making it highly likely that the female candidate would be hired.

30. These search terms violated SRU's hiring policy.

31. McCoy approved these search terms.

32. Dr. Niebauer protested the biased nature of these search terms to the Department and McCoy but McCoy stood by her approval of the terms.

33. The Department eventually changed these search terms after the Pennsylvania State System of Higher Education (PASSHE) contacted the Department regarding these terms. PASSHE contacted the Department in response to an inquiry from another faculty member.

34. In response to protests regarding the female candidate's hiring, Dr. Niebauer was subsequently harassed during a Department meeting and forced to leave. A female colleague told Dr. Niebauer, "Now you know what it's like to be bullied."

35. For the 2012-2013 academic year, the Department hired the female applicant over a male candidate who received a higher applicant score, as well as a second male candidate who was not hired because Department faculty stated they did not like his presentation.

36. At a faculty meeting on October 2, 2012, Dr. Niebauer objected to gender-biased practices within the Psychology Department.

37. Specifically, Dr. Niebauer pointed out hiring practices that he believes to be biased and unethical. Dr. Niebauer predicted that the Department would again hire the female candidate over other qualified candidates, a predication that later came true.

38. In response, certain female professors in the Department filed a complaint in which they alleged that Dr. Niebauer made personal attacks and behaved unprofessionally in the meeting.

39. As a result of this complaint, Dr. Niebauer was subjected to an investigation on December 7, 2012.

40. Following the December 7, 2012 investigation, Dean Hannam admonished Dr. Niebauer for protesting what he perceived as gender-biased practices.

41. Dean Hannam further told Dr. Niebauer that she expected him to behave professionally at all times and he was forbidden from making similar accusations against Department faculty in the future.

42. On April 16, 2013, Dean Hannam removed Dr. Niebauer from a university committee for research.

43. In order to successfully apply for promotion to full professor, Dr. Niebauer must be a member of a university committee.

44. On April 29, 2013, Dr. Niebauer wrote to Dr. Philip Way. Dr. Way is the Provost and Vice President for Academic Affairs at SRU.

45. Around this time, Dr. Niebauer also contacted the president of his union, the Association of Pennsylvania State College and University Faculties, to report similar concerns.

46. In his letter to Dr. Way, Dr. Niebauer sought assistance regarding the Department's gender bias. Dr. Niebauer informed Dr. Way that he frequently and repeatedly complained of the Department's gender bias to his supervisors but received no help.

47. Dean Hannam received many of Dr. Niebauer's complaints but refused to help in any way and reprimanded him on several occasions for speaking out.

48. McCoy also received many of Dr. Niebauer's complaints and requests for assistance but refused to help him in any way.

49. In his letter, Dr. Niebauer also informed Dr. Way of discrimination against male students in the Psychology Department.

50. In recent years, an increasing number of male students have approached Dr. Niebauer to complain that their female professors in the Psychology Department discriminate against them.

51. For example, these students told Dr. Niebauer that they are often excluded in class activities and receive lower grades than female students without any apparent justification.

52. In one instance, one female professor, Dr. Massey, approached a group of students conversing with Dr. Niebauer and stated, "Lesbians only hang out with males because they are easy to manipulate."

53. The actions of certain Psychology Department professors and supervisory personnel have made the Department a hostile environment for Dr. Niebauer and male psychology students.

54. Following Dr. Niebauer's April 29, 2013 letter to Dr. Way, SRU conducted a cursory investigation.

55. This investigation was headed by McCoy, even though Dr. Niebauer had specifically complained to McCoy's treatment of him.

56. Upon information and belief, McCoy's involvement in this investigation was not necessary and other SRU personnel could have conducted the same without her involvement.

57. McCoy subsequently reported that her investigation of Dr. Niebauer's complaints failed to find any evidence of wrongdoing by SRU personnel.

58. Prior to August 16, 2013, Dr. Niebauer sent a letter to PASSHE. The content of this letter

was similar to that of Dr. Niebauer's April 2013 letter to Dr. Way.

59. Dr. Niebauer's letter referenced a number of student complaints he had received concerning gender bias in the Psychology Department.

60. PASSHE forwarded Plaintiff's letter to Defendant.

61. Defendant initiated another investigation and placed McCoy in charge of the investigation.

62. On August 16, 2013, McCoy demanded that Dr. Niebauer turn over a list of students who had made such complaints.

63. Dr. Niebauer, citing concerns for confidentiality, refused to turn over the names of these students.

64. Dr. Niebauer's refusal was based on his fear that McCoy would give these students' names to their female psychology professors, who might then retaliate against the students.

65. McCoy attempted to coerce Dr. Niebauer into turning over these names by wrongly telling him that his conversations with students were not subject to confidentiality and that he was required to turn over their names.

66. Dr. Niebauer reasonably perceived McCoy's demand as threatening punishment and/or legal action if he did not comply.

67. Dr. Niebauer then contacted his union for assistance. Dr. Niebauer's union then informed McCoy that Dr. Niebauer could not legally be compelled to divulge the names of students from whom he had received complaints.

68. From the 2012-2013 academic year to the present, the Psychology faculty has made purposeful efforts to exclude Dr. Niebauer from the Department.

69. Since his hiring in 2000, Dr. Niebauer had taught Statistics and Experimental Psychology classes specific to the Psychology major. Beginning with the 2012-2013 academic year,

however, Dr. Sanftner removed these classes and replaced them with much less favorable large introductory classes previously taught by another professor.

70. The Psychology Department chose a regular weekly department meeting time during the one time Plaintiff is not available to meet, despite Dr. Niebauer's protests.

71. The Department has refused to make accommodations to allow Dr. Niebauer to attend the meetings but has made efforts to allow female faculty members to attend, including allowing a female faculty member to "attend" via Skype video conferencing.

72. On one occasion, the Department changed its meeting time for that week but did not inform Dr. Niebauer so that he could attend.

73. Dr. Niebauer's colleagues have repeatedly filed complaints against him, and Dean Hannam and Dr. Sanftner have repeatedly chastised Dr. Niebauer as a result.

74. As participants in the harassment against Dr. Niebauer, Dr. Sanftner and Dean Hannam knew that these complaints were unfounded.

75. Dr. Niebauer's colleagues, Dr. Sanftner, and Dean Hannam have repeatedly accused Dr. Niebauer of acting unprofessionally and unduly accusatory, especially when Dr. Niebauer has spoken up about discrimination in the Psychology Department.

76. For example, in a complaint recently filed by one female faculty member on May 2, 2014, the female faculty professor accused Dr. Niebauer of behaving unprofessionally and making unfounded accusations against Department members.

77. This complaint was received and read by SRU human resources and, upon information and belief, Dean Hannam and Dr. Sanftner. In addition, SRU's provost has access to complaints of this matter and reviews them when considering faculty promotions.

78. Complaints of this kind against Dr. Niebauer could have a negative impact on his career.

79. On August 11, 2014, Dr. Niebauer visited his lab at SRU and discovered that his equipment had been boxed up, his pictures taken down, and his computer removed.

80. Dr. Niebauer was not informed that any changes were being made to his lab.

81. The computer in Dr. Niebauer's lab contained valuable research programs and data.

82. When Dr. Niebauer contacted Dean Hannam's office, he was told that these actions in his lab were an accident and that they would attempt to locate his computer.

83. Dr. Niebauer's computer was eventually returned on or about August 22, 2014.

84. One female professor in the Psychology Department shares Dr. Niebauer's concerns regarding gender bias in the Department and has made complaints similar to Dr. Niebauer's. In response, other Department professors have filed complaints against her with Dean Hannam and Provost Way, and she is now under investigation for "unprofessional behavior."

85. The above-described conduct was taken against Dr. Niebauer because he is male and in response to his protests regarding anti-male biases in the Psychology Department.

86. Dr. Niebauer regularly experiences gender-based bullying from his female colleagues and supervisors.

87. The actions of Dr. Niebauer's supervisors and colleagues have created a hostile work environment for him.

88. Based on this hostile work environment, Dr. Niebauer has been unable to apply for a promotion to full professor, as this promotion is very unlikely to be granted without the support of his department chair and dean.

89. Dr. Niebauer suffers stress and anxiety as a result of the treatment he receives. Dr. Niebauer also suffers bruxism and regularly receives treatment from a chiropractor.

## Count One
### Title VII of the Civil Rights Act—Sex Discrimination

1. Plaintiff incorporates the previous paragraphs by reference as if fully set forth herein.

2. Plaintiff is an employee of Defendant within the meaning of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e(f).

3. Defendant is an employer of the Plaintiff within the meaning of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e(b).

4. Plaintiff was subjected unwelcome conduct by Defendant, by and through its employees, based on his gender.

5. The unwelcome sex discrimination against Plaintiff created an intimidating, oppressive, hostile, and offense work environment that interfered with Plaintiff's emotional and physical wellbeing.

6. The conduct of Defendant was severe and pervasive and altered the conditions of Plaintiff's employment.

7. Defendant failed to take all reasonable and necessary steps to eliminate sex discrimination and prevent it from occurring in the future.

8. The harassment of Plaintiff by his supervisors and peers and Defendant's failure to reasonably prevent and eliminate such harassment constitutes discrimination on the basis of Plaintiff's sex in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-2.

## Count Two
### Title VII of the Civil Rights Act—Retaliation

9. Plaintiff incorporates the previous paragraphs by reference as if fully set forth herein.

10. A substantial and/or motivating factor in much of the conduct of Defendant's employees against Plaintiff was Plaintiff's complaints concerning gender bias in the Psychology Department.

11. Defendant's conduct in retaliation for Plaintiff's complaints constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-3.

## Relief Requested

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

1. A judgment declaring that the discriminatory practices identified above violate Title VII and discriminate against Plaintiff on the basis of his gender.

2. An order enjoining Defendant and its personnel from discriminating against Plaintiff on the basis of his gender.

3. Compensatory and punitive damages for mental anguish, embarrassment, emotional distress, and loss of enjoyment of life in an amount to be shown at trial.

4. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C.A. § 2000e-5(k) and any other applicable provision of law.

5. All such other and further legal and equitable relief to which Plaintiff may be entitled.

    Respectfully submitted,

    */s/ Alex J. Barker*
    Marcus B. Schneider, Esquire
    PA I.D. No. 208421
    Alex J. Barker, Esquire
    PA I.D. No. 316871
    STEELE SCHNEIDER
    428 Forbes Avenue, Suite 700
    Pittsburgh, PA 15219
    (412) 235-7682
    (412) 235-7693/facsimile
    marcschneider@steeleschneider.com
    alexbarker@steeleschneider.com